United States v. Otradovec is the next case. Mr. Anderson. Good morning. May it please the Court. My name is Peter Henderson. I'm here on behalf of Mr. Otradovec with the Federal Public Defender's Office. We provide representation to indigent defendants in the Central District of Illinois and the Seventh Circuit. And that's because the word indigent in modern parlance refers to those who are eligible for the appointment of counsel. I think that usage is most clear in Iowa v. Tovar from the Supreme Court.       I think that's the case. I think that's the case. I think that's the case. I think that's the case. who are financially ineligible for the appointment of counsel, that language actually was copied directly from the Solicitor General's brief, who made that same distinction. The term indigent traditionally, of course, has meant more desperate poverty, and certainly poverty that one does not have the means to escape himself. But ever since Gideon v. Wainwright identified a constitutional right to the appointment of counsel for indigent defendants, and the professionalization of public defense, the word indigent has now become a synonym for eligible for the appointment of counsel under the particular jurisdiction. And you say that to the exclusion of the other definition, what you characterize as the older definition, the kind of penniless or completely impoverished construction, that they really have become mutually exclusive of one another? Well, eligible for the appointment of counsel would include all of the penniless people. Right. I guess what I'm trying to ask Mr. Henderson is, can it mean both? It certainly can mean both. But so take a look at, for example, Section 3600 from Title 18, which talks about indigent applicants. And that statute, which was enacted in 2000, so after this modern definition had become salient, says how do you determine whether somebody is an indigent applicant? You apply the criteria of the Criminal Justice Act, Section 3006A. And so Congress is equating the two, saying at the time the Criminal Justice Act was enacted, there was a difference. Congress set a newer floor for who gets appointed counsel. It's not just the indigent, it's the working poor as well. But in 2000, Congress said indigent means includes all of those people. The floor is now set at a higher level for who qualifies as indigent. But why does the word mean the same elsewhere? Eligible for appointment of counsel and indigent certainly doesn't mean the same in 1915, which talks about leave to proceed in forma pauperis. Well, let me give you a concrete example. Suppose a district judge says the defendant has $10,000. That's not enough to hire counsel. It would cost $50,000. So I conclude that it is appropriate for me to appoint counsel. The defendant still has $10,000. Why would he be indigent for the purpose of paying a $5,000 assessment? Because that's what the term indigent means. It's not does the defendant have the ability to pay a $5,000 fine. That's not the statutory language. Well, then you say it has to mean the same thing in section 1915, and it plainly doesn't. Well, but that is a different, I mean, that's a different title entirely, right? When we're talking about the criminal code, an indigent defendant, that's how the word has become salient in that particular context. So when you look in Title 18, the word indigent also appears back with this traditional meaning to refer to the availability of subpoenas for indigent people. And it refers to Rule 17 of the Federal Rules of Criminal Procedure. I don't think there's any doubt that somebody who's appointed or who's represented by appointed counsel is entitled to have costs of the subpoena covered by the court, even if they have $10,000. I don't, I'm not aware of any court that has said, well, you're represented by a public defender, but you've got some money to pay for the hotel, so. But you think it would be, forget about the special assessment. You think it would be legally forbidden for the district court to say, well, under the guidelines fine table, the fine can be up to a million dollars. You don't have a million, but you do have 10,000. I'm fining you $10,000. Do you think that would be a reversible error? No, the court could absolutely do that. Because fines do not support. Because the court could say, you're not indigent for that purpose. Isn't that the problem? Well, no, I don't think that is a problem. Because the word indigent does not say you don't have any money. That's not what, how we define the word indigent in today's definition. We talk about people who are appointed by counsel as being indigent. As the Supreme Court said, it's the opposite of those who are ineligible for court-appointed counsel. But the point is, I mean, Congress addressed this concern a bit in putting the priority of the fines. If somebody has $10,000, Congress wants that money, if it's paid at all, to go to the Crime Victims Fund, not to go to the Domestic Trafficking Fund. One thing that troubles me about your position is you're asking us to disagree with not one, not two, but nine other circuits that have rejected this position. I would hope you would be finding, try to be finding some less disadvantaged alternative. Yeah, I don't know what to say. I didn't count to nine, but obviously you have. It's nine. Here's what I'll say about it. The Fifth Circuit really got the ball rolling, I think, in 2018. And their definition of indigent is based on a 1954 dictionary. I mean, it's just out of date. It's not what the word means in modern criminal justice parlance. The other thing that I would say is, of course, we want to avoid circuit splits. The real, I think, tenet that the other circuits are adhering to is a district judge may look at future resources to determine if somebody has the ability to pay a fine. And they say, look, indigent is future. Well, it might turn out that that's wrong, too. I'll be asking your adversaries some questions about that. Well, I'll look forward to that. But on this record, the district judge said, I find you don't have the ability to pay a fine in the future. So even if we go along with the other circuits, on this record... Did the district judge use his crystal ball in making that statement? No. I've got problems, as will become clear, with the whole idea that a district judge can peer into the future and see what somebody can pay in 15 years. I completely agree with that. It's been allowed under the fine statutes for judges, basically, to estimate. But I absolutely agree with you. The whole point of Section 3014, the special assessment, to say the court shall assess this assessment on somebody who is non-indigent, you have to take the state of the world as it is, not how you imagine it may be. Not necessarily, but that also hasn't been contested here. You might take the state of the world as it was on the day of the indictment, or as it was on the day of the crime, but I don't understand the United States to be arguing for either of those points of inquiry. Right. Right, and what I would just say is, we want to avoid situations where courts have to use a crystal ball to determine whether somebody is indigent, because courts every day determine whether somebody is indigent under the Criminal Justice Act when they appoint counsel at initial appearances and other proceedings. I'll reserve the remainder of my two minutes. Thank you. Certainly, counsel. Ms. Finn, I trust you can understand what your first question is going to be, which is, you know, when I got a commission, it did not come with pre-vision, right? And I doubt very much that any district judge has the power to look 15 years into the future just by having tenure of office. How in the world does your position...  Two things, Your Honor. The court looked at the facts that it knew on the day of sentencing to determine that Mr. Ochodovic had the ability to pay that $5,000, that he was non-indigent. We can first look to the fact that he had a $5,000 truck. Okay, on that day, he still had $5,000. That's what the assessment is. So on that basis alone, the court said you have some assets and you have retained counsel. What the other courts are looking at is saying you look at now and you look at the future. Now, in the future, in the sense that... My question is, how can a court look at the future? Because he saw... I can ask this in a different way, which is, if a court can look at the future and say, this person in 20 years will be able to pay $5,000, isn't the upshot of your position that the special assessment should be imposed in every case? Because anyone within 20 years might be able to pay $5,000. He might get a job, he might get an inheritance, he might win the lottery, right? So the assessment should be imposed, therefore, in every single case. But the statute is clear. It's to be imposed sometimes and not others. And I must say, I have... How is the judge supposed to use his view of the future to determine which ones to impose it in and which ones not to impose it in? He looks at the factors that he knows at the time of sentencing and what he knew at the time of sentencing about this defendant... Anybody can look at factors. The question is, how do you see the future? You can see the now, right? I can imagine a rule that says something like, somebody who's never had a well-paying job and has no money now, I'm going to deem indigent. Somebody who once had a well-paying job, I'm predicting he can get it back. I can imagine saying, I'm just looking at the now. But that doesn't seem to be your position. Our position is that he looks at the facts that he knows now, and that is, with this defendant, he had a college degree, he had a regular employment history, he had a lack of debt. Unlike a lot of the defendants in those other cases, he's not coming out of prison with $50,000 in debt, he doesn't have restitution to pay. So that defendant, who has always had a job, who, according to his mom, is a good student, who doesn't have dependents, that defendant can pay the $5,000 because he's got 20 years to do it. And at 20 bucks a month, he can make that $5,000 assessment. Ms Finn, is it your understanding that that's the way the assessment goes for fines, too? So forget this special assessment, right? And take a white-collar fraud case where a defendant is fined, criminal defendant. In the application of the 3572 factors, wouldn't you consider earning capacity? Yes. And earning capacity at some level is forward-looking based upon facts you know now. That's right. Yes, so I agree with that. But if I could just back up for a second, at the time of sentencing, the only question for the district court was whether the defendant was non-indigent. That was the question. And the only argument made to the district court was that he didn't have any money because he drained his bank accounts and all he had left was this truck for $5,000. And the district court said, well, I'm looking at that and I see he's got some assets and he retained an attorney, and so I'm gonna find that he is non-indigent. Now, of course, the court was also forward-looking when he set that $100 a month schedule for which he could pay the $5,000 upon his release. But you can look at it either way, that he had that $5,000 the day of sentencing and that he could also pay it later. What the defendant's arguing now, though, is the legal definition of indigency, and that was never presented to the district court. The district court never had the opportunity to address the issue of what it means to be indigent and whether or not it means whether someone has appointed counsel. And I would say that I understand the usage of indigency is connected to that, but the fact of it, it's just apples and oranges. Right to counsel in a criminal case is a constitutional right. It is an immediate need, and it is an amount of money that could be astronomical. In this case, it was at least $30,000 according to the defendant's attorney because that's how much he had before he retained him. So it's just a completely different assessment. It's an assessment made at a time when you don't know if somebody's gonna plead, if they're gonna go to trial, and it's made in that moment. By the time you get to sentencing, it's a completely different question. So even attaching it- What do you make of, what's your response to I think a fair point Mr. Henderson's making about the way Congress drafted 2559, capital A, where they have, you know what I'm talking about? Yes. The $50,000 assessment. Right. For a certain subset of offenders. And there they, and it's basically contemporaneous. I think it's within five years of this one, this provision that we're talking about. But there they did expressly build in, express consideration of earning capacity. And here they did not. Right. It's the same Congress. What if anything do we make of that? The only- And I didn't see where you even responded to it. The only thing that I can say about the 3014 $5,000 assessment is it refers to being administered the way that criminal fines are administered, the way criminal fines are administered are over a period of 20 years. And that doesn't make any sense if you're not talking about someone's ability to pay it over that period of time. So I- They have the, both provisions have the 20 year installment possibility in common. But effectively the very same Congress in the 2559A, okay, includes expressly permission to consider earning capacity. Or future ability to pay. And here with this provision, Congress does not. Right. What sense does that make? Well, they didn't talk about that at all, right? In this statute they use the term non-indigent. No, and that's Mr. Henderson's point, right? They knew how four years later because they showed us with what they wrote, what they enacted into law. Right. But it's a different, it's a different subsection. They picked a different word. And then they pointed you to the fine statute. It just makes more sense if you've got 20 years that you would look to whether or not somebody can- 2559A points to the fine statute too. So it's just odd to me. And I don't know what the answer to it is. Well, I don't think the answer is going back to whether or not you're, you are eligible for court appointed counsel. There's nothing that suggests that. No, no, no, Mr. Henderson's point's more limited than that. His point is that when Congress, when the same Congress says this is permitted in one circumstance and in a very closely related provision, because it's not like here we're talking, all of a sudden we're talking about income tax fraud, right? We're talking about certain, the same class of offenders or the same types of conduct. It's not expressly included. And you just say, well, they, I don't know. Don't worry about it. It's close enough for government work. Well, 3014 does- I think we gotta be able to explain it. It does reach a broader category of offenders. 3014 reaches the human trafficking offenders along with the sex offenders. So it's a little bit different in that regard and it reaches a broader scope of folks. So I'm not sure we can say that they're the same category. Well, it's 50,000 in the water because it's worse conduct. And it's more specific to sexual exploitation of children, whereas this is a broader statute and a different focus. And we think it's worse. It's more warranting of the 50,000 assessment. Right, right. And the $5,000 was just a different focus. I don't really have a further explanation for that. I would just say also that under a plain error review standard at this point, the district court judge had no opportunity to consider what the definition of indigent meant as it related to whether somebody got appointment of counsel. And under the state of the law with the considerable number of circuits viewing it the way they do, I don't think there can be plain error here. And I'd ask the court to affirm the district court. It's odd to me that in that circuit split, I can't see one court that's talked about 2559 capital A. And I have no idea how you think we can analyze this, or not you, but how we can analyze this without considering that provision. If the court would like further briefing on that, I... If we want further briefing on that, we will let you know. I appreciate that. Thank you, Your Honor. Although I must say, since it was relied on by your opponent and you chose to ignore it, you have very weak standing to request supplemental briefing. Mr. Henderson. Let me pick up on that 2259A point because I think it relates to the statutory language in 3014. 3014 does not say the court shall impose a fine on anyone it deems will be able to pay a fine or can pay a fine. It describes a particular person, a non-indigent person, whoever that is. And the court has to make that determination at sentencing. Is the person in front of me a non-indigent person or not? I did want to... Let me put my question to Ms. Finn in a different way, which is, is there anything wrong with a court saying to somebody who has a college education, you have very high intellectual capital, but very low current funds. But I'm thinking of indigents in terms of all of your capital, that is both your earning capacity and your current funds. For counsel, we deal only with current funds on hand. But for other purposes, we deal with your other assets, things you can use. That includes a big house. It includes your college education. Isn't that an attempt to measure your wealth now, just not financial wealth? It absolutely is. And those sorts of factors are incorporated into section 3572 and section 2259A, to say if the district court finds you have a lot of capital, unrealized capital, then I can impose a fine commensurate with the severity of offense, et cetera, to punish you for that. But what Congress... But if the district court says, you have this spectacular education, but you can't get liquid assets for that right now, you don't have any cash, so I'm appointing a lawyer. Right? We're back to my concern that the word indigent means different things in different contexts. Right, and our main point is, and obviously we've made in lots of pages of briefing, is that the most salient understanding of the word indigent is somebody who gets appointed counsel in federal court. Yep. Maybe we have two positions, neither of which can be quite right. Well, I hope it's closer to mine, but thank you. Okay, thank you, Mr. Henderson. Our final...